FILED

2012 Nov-26  AM 09:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **MICOR INDUSTRIES, INC.,** *et al.*, | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **vs.** | ) | **Civil Action No. 12-S-02654-NE** |
| | ) | |
| **C2JS HOLDINGS, INC.,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Micor Industries, Inc., Micor Defense, Inc., and Charles St. George, seek a declaratory judgment that they hold the sole and exclusive rights to a .50-caliber bull pup sniper rifle developed by St. George.[1]  In turn, defendants, C2JS Holdings, Inc. and Christopher G. L. Jones, have asserted counterclaims arising from St. George's breach of an alleged partnership agreement with defendants.[2]  This case is before the court on a motion by Micor Industries, Inc. and Micor Defense, Inc. to dismiss the counterclaims for inducement of breach of contract and unjust enrichment,[3] and on a motion by St. George to dismiss the counterclaims for fraud,

---

[1] Doc. no. 1 (Complaint) ¶¶ 50-53.

[2] Doc. no. 10 (Answer and Counterclaim).  Defendants assert a total of eleven counterclaims. The five counts against Micor Industries, Inc. and Micor Defense, Inc. are:  inducement of breach of contract, tortious interference with contract, tortious and intentional interference with business relations, conversion, and unjust enrichment.  *Id.* ¶¶ 34-74.  The five counts against St. George are: breach of contract, breach of fiduciary duties, fraud, fraudulent misrepresentation, fraud in the inducement, conversion, and unjust enrichment.  *Id.* ¶¶ 75-106.  The final count is a request for an accounting.  *Id.* ¶¶ 107-110.

[3] Doc. no. 14 (Motion to Dismiss by Micor Industries, Inc. and Micor Defense, Inc.), at 1.

fraudulent misrepresentation, fraud in the inducement, and unjust enrichment.[4]  Upon consideration, this court will deny the motions.

## I.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b) permits a party to move to dismiss a complaint for, among other reasons, "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  That rule must be read together with Rule 8(a), which requires that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 544 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  [*Bell Atlantic Corp.*, 550 U.S.] at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id*., at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Ibid*.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id*., at 557 (brackets omitted).

*Iqbal*, 556 U.S. at 678 (alteration supplied).

---

[4] Doc. no. 17 (Motion to Dismiss by Charles St. George), at 1, 4.

## II.  FACTS AS ALLEGED

As always is the case in the context of ruling upon a motion to dismiss, the

district court is required to assume that

> the facts set forth in the plaintiff's complaint are true.  *See Anza* [*v. Ideal
> Steel Supply Corp.*], 547 U.S. 451, [453,] 126 S. Ct. [1991,] 1994
> [(2006)] (stating that on a motion to dismiss, the court must "accept as
> true the factual allegations in the amended complaint"); *Marsh v. Butler
> County*, 268 F.3d 1014, 1023 (11th Cir. 2001) (*en banc*) (setting forth
> the facts in the case by "[a]ccepting all well-pleaded factual allegations
> (with reasonable inferences drawn favorably to Plaintiffs) in the
> complaint as true").   Because we must accept the allegations of
> plaintiff's complaint as true, what we set out in this opinion as "the
> facts" for Rule 12(b)(6) purposes may not be the actual facts.

*Williams v. Mohawk Industries, Inc.*, 465 F.3d 1277, 1281 n.1 (11th Cir. 2006)

(alterations supplied).

### A.    The Alleged Partnership

For many years, defendant Christopher G. L. Jones and plaintiff Charles St.

George had a partnership for the purpose of researching and developing weapons

technology to be manufactured and sold for their joint financial benefit.[5] Defendant

Jones provided the sole source of funding, while plaintiff St. George performed the

---

[5] Doc. no. 10 (Answer and Counterclaim) ¶ 8.  Defendants describe the relationship between Jones and St. George as a "partnership," *see id.*, while St. George disputes that designation as a mere "legal conclusion which a court is not required to take as true."  *See* doc. no. 18 (Brief in Support of Motion to Dismiss by Charles St. George), at 11.  For the purpose of this summary of facts as alleged, the court will refer to the relationship between Jones and St. George as a "partnership," without expressing an opinion on whether the relationship was, in fact, a partnership within the legal meaning of the word.

required research.[6]

At some point, Jones and St. George agreed to develop a .50-caliber bull pup sniper rifle.[7]  Jones then purchased the parts and paid St. George several hundred thousand dollars to refine the design.[8]  The parties also created and organized defendant C2JS Holdings, Inc. ("C2JS") to license and market the weapon, and engaged in various marketing activities.[9]

## B.    The Patent Applications

In an electronic mail ("e-mail") message dated October 21, 2009, St. George urged Jones to "move ASAP" with the filing of provisional patent applications for the new sniper rifle.[10]  With St. George's agreement, Jones engaged Harrington & Smith, P.C. ("Harrington & Smith") for the purpose of prosecuting *patent* applications, and The Intellectual Property Center LLC ("Intellectual Property Center") for the purpose of prosecuting *trademark* applications.[11]  Jones paid the legal fees of both firms.[12]

Harrington & Smith filed three patent applications on February 2, 2010.[13]  The first was a provisional application bearing Serial No. 61/337,358 ("the Provisional

---

[6] Doc. no. 10 (Answer and Counterclaim) ¶ 8.

[7] *Id.* ¶ 10.

[8] *Id.*

[9] *Id.*

[10] *Id.* ¶ 11; doc. no. 10-2 (E-Mail Dated October 21, 2009).

[11] *Id.* ¶ 12; doc. no. 10-1 (Engagement Letter with Harrington & Smith).

[12] Doc. no. 10 (Answer and Counterclaim) ¶ 12.

[13] *Id.* ¶¶ 13-14.

Application").[14]  The second was a patent application bearing Serial No. 13/019,539

("the '539 Application").[15]  The third was a patent application with the United States

Patent and Trademark Office, in its capacity as a Patent Cooperation Treaty ("PCT")

Receiving Office, bearing Serial No. PCT/US2011/023446 ("the PCT '446

Application").[16]

## C.    The Licensing Negotiations between the Micor Plaintiffs and Defendants

With St. George's approval, defendants began negotiating a potential license

agreement for the manufacture and sale of the sniper rifle with Micor Industries, Inc.

and Micor Defense, Inc. (collectively, "the Micor plaintiffs") in early 2011.[17]  Prior

to beginning the negotiations, the Micor plaintiffs were allegedly advised "of the

business relationship between Jones and St. George, and of the pendency of the '539

Application and the PCT '446 Application in furtherance of that relationship."[18]

Simultaneously with the beginning of the negotiations, counsel for C2JS

prepared a document that allegedly memorialized an oral agreement for St. George to

assign to C2JS "equitable title to the [sniper rifle] and all future improvements thereof

---

[14] Doc. no. 10-3 (Provisional Application).

[15] Doc. no. 10-4 ('539 Application).

[16] Doc. no. 10-5 (PCT '446 Application).

[17] Doc. no. 10 (Answer and Counterclaim) ¶ 17.

[18] ¶ 15.  Defendants do not specify who advised the Micor plaintiffs of the relationship between defendants and St. George, and of the pendency of the patent applications in furtherance of that relationship.

. . . in furtherance of the agreed-upon goals of the partnership."[19]  When St. George was presented with the document, he did not execute it, but allegedly reaffirmed his obligation to do so.[20]

During the negotiations, St. George advised Jones that he (St. George) had learned of an opportunity to obtain orders for the sniper rifle through an "RFP" (presumably, a Request for Proposal) issued by a branch of the United States military.[21]  The Micor representatives were also informed of the opportunity, as well as of a potential second opportunity with a different military program.[22]   All the parties to the negotiations investigated the two marketing opportunities.[23]

C2JS and the Micor plaintiffs appeared to reach an agreement for the domestic production and sale of the sniper rifle in July of 2011.[24]  Counsel for C2JS forwarded copies of the proposed license agreement to counsel for the Micor plaintiffs by e-mail on July 26, and again on July 28, 2011, with copies to Jones, St. George, and Mike Heath, President of both Micor Industries, Inc. and Micor Defense, Inc.[25]   In the e-mails, counsel for C2JS stated that "[w]e had a productive telephone conference with

---

[19] *Id.* ¶ 16 (alteration supplied).

[20] *Id.*

[21] *Id.* ¶ 18.

[22] *Id.*  It is not clear whether the Micor representatives were informed of the marketing opportunities by St. George, Jones, or an unspecified third party.

[23] *Id.*

[24] Doc. no. 10 (Answer and Counterclaim) ¶ 19.

[25] *Id.*; doc. no. 10-6 (E-Mails from Counsel for C2JS).

Mike Heath last Thursday which, subject to your review, resolved open business issues."[26]

Heath did not dispute the statement that all "open business issues" had been resolved.[27]    In fact, Heath e-mailed counsel for C2JS and counsel for the Micor plaintiffs on August 3, 2011, stating:  "Checking on how things are progressing with agreement???  Please update me!"[28]    Nevertheless, the preparation of an execution draft of the license agreement stalled, allegedly due to the Micor plaintiffs' attempt to renegotiate certain terms.[29]

For example, Heath e-mailed Jones, St. George, and counsel for C2JS on August 11, 2011, stating: "Fella's, after much thought and dissecting the financial #'s I am requesting the 25% license fee be adjusted to 20%. . . ."[30]    Heath also demanded that the license be extended to include the manufacture and sale of the rifle outside of the United States.[31]    C2JS and the Micor plaintiffs continued to negotiate through late fall of 2011 without ultimately executing a license agreement.[32]

Meanwhile, Jones, St. George, and C2JS continued to monitor the status of the

---

[26] *Id.*

[27] Doc. no. 10 (Answer and Counterclaim) ¶ 20.

[28] *Id.*; doc. no. 10-7 (E-Mails from Mike Heath).

[29] Doc. no. 10 (Answer and Counterclaim) ¶ 21.

[30] *Id.* ¶ 22; doc. no. 10-8 (E-Mails from Mike Heath).

[31] Doc. no. 10 (Answer and Counterclaim) ¶ 23.

[32] *Id.* ¶ 24.

pending patent applications for the new sniper rifle.[33]  For example, counsel for C2JS e-mailed Harrington & Smith on August 26, 2011, inquiring as to the status of the applications, with copies to Jones and St. George.[34]  The e-mail also advised that counsel for C2JS had prepared an assignment of the patent from St. George to C2JS, with the intent to register it with the United States Patent and Trademark Office.[35]

**D.     The License Agreement between the Micor Plaintiffs and St. George**

During the breakdown of negotiations between the Micor Plaintiffs, *Jones*, and *C2JS* at the end of 2011 and the early part of January 2012, defendants allege that the Micor Plaintiffs and *St. George* engaged in clandestine communications that resulted in the execution their own license agreement for the sniper rifle in or around January of 2012.[36]  While defendants do not know the content of the alleged agreement, they were advised that St. George licensed certain rights to manufacture and market technology described in the pending patent applications.[37]  Later, defendants were advised that St. George had become an employee of one of the Micor plaintiffs.[38]

On or around January 27, 2012, after the execution of the license agreement,

---

[33] *Id.* ¶ 25.

[34] *Id.*; doc. no. 10-9 (E-Mails from Counsel for C2JS).

[35] *Id.*

[36] Doc. no. 10 (Answer and Counterclaim) ¶¶ 27-28.  Plaintiffs allegedly failed to comply with defendants' requests for a copy of the license agreement.  *Id.* ¶ 28.  Defendants do not specify how they learned of the existence of the agreement, or who advised them of its content.

[37] *Id.* ¶¶ 28-29.

[38] *Id.* ¶ 29.  Defendants do not specify who advised them of St. George's new employment status.

and without the authorization of defendants, Harrington & Smith requested permission from the United States Patent and Trademark Office ("USPTO") to withdraw as counsel of record for the '539 Application.[39]  The USPTO granted the request in March of 2012.[40]  Thereafter, in April of 2012, and again without the authorization of defendants, St. George filed a letter of express abandonment with the USPTO for the '539 and PCT '446 Applications.[41]  The USPTO issued a Notice of Express Abandonment for the '539 Application, but has not issued such a notice for the PCT '446 Application.[42]

## III.  DISCUSSION

**A.    Counterclaims for Unjust Enrichment Against All Plaintiffs**

All plaintiffs urge this court to dismiss the counterclaims for unjust enrichment, arguing that such claims are limited to parties who or which seek monetary relief, but have no adequate remedy at law.[43]  In response, defendants correctly argue that unjust enrichment can include claims for money *and property*, and that a court can remedy unjust enrichment that involves a breach of fiduciary or quasi-fiduciary duties by

---

[39] *Id.* ¶ 30.

[40] *Id.* ¶ 31.

[41] *Id.* ¶ 32.

[42] Doc. no. 10 (Answer and Counterclaim) ¶ 32.  As of the date of the answer, the PCT '446 Application remained pending.  *Id.*

[43] Doc. nos. 14 (Motion to Dismiss by Micor Industries, Inc. and Micor Defense, Inc.), at 2; 17 (Motion to Dismiss by Charles St. George), at 4 (asking this court to "apply the arguments and rationales" from the brief filed by the Micor plaintiffs to the counterclaim for unjust enrichment against St. George).

imposing a constructive trust, regardless of whether the remedy at law is adequate.[44]

"'Unjust enrichment' is generally defined as the unjust retention of a *benefit* to the loss of another or the retention of money *or property* of another against the fundamental principles of justice or equity and good conscience."  Ally Windsor Howell, *Tilley's Alabama Equity* § 19.1 (2012) (emphasis supplied).

> Under the doctrine of quasi-contract, the law implies a contract, based upon the principles of equity, to prevent the unjust enrichment of one who knowingly accepts and retains a benefit provided at the detriment of another, who has a reasonable expectation of compensation. *Utah Foam Prods., Inc. v. Polytec, Inc.*, 584 So. 2d 1345 (Ala. 1991); *Opelika Prod. Credit Ass'n v. Lamb*, 361 So. 2d 95 (Ala. 1978); *Hendrix, Mohr & Yardley, Inc. v. City of Daphne*, 359 So. 2d 792 (Ala. 1978). *The benefit conferred need not be strictly monetary*:
>
> > "A person may be considered to have conferred a benefit upon another if he has given him possession of, or an interest in, land, chattels, or choses in action, or if he performs some service which is beneficial to or at the request of the other person, or if he satisfies a duty [or] a debt of the other.  Whenever one person adds to the other's advantage *in any form*, whether by increasing his holdings or saving him from expense or loss, he has conferred a benefit upon the other."

*American Family Care v. Fox*, 642 So. 2d 486, 488 (Ala. Civ. App. 1994) (quoting *Opelika*, 359 So. 2d at 99) (alteration in original, emphasis supplied).

In *American Family Care v. Irwin*, 571 So. 2d 1053 (Ala. 1990), the Alabama Supreme Court explicitly addressed the following question:  "Will equity specifically

---

[44] Doc. no. 23 (Response to Motion to Dismiss by Micor Industries, Inc. and Micor Defense, Inc.), at 7-8.

enforce the duty of the constructive trustee to convey the property held in constructive trust if there is an adequate remedy at law?" *Id.* at 1060. Upon noting that the "Titans of Trust" did not agree, and after "reviewing many cases and treatises" on the subject, the *Irwin* court was persuaded

> that the conclusion reached in "*Must the Remedy at Law Be Inadequate Before a Constructive Trust Will Be Impressed*?", which appeared in the Notes and Comment section of 25 St. John's L. Rev. 283, 295 (1951), succinctly summarizes the authorities and is the better rule of law:
>
>> "Express trusts are enforceable in equity at the suit of the *cestui que* without regard to the adequacy of the remedy at law. However, as to constructive trusts, while equity has the power to act, it will not; *unless a fiduciary or quasi-fiduciary relation is involved, or unless relief at law would be inadequate because the chattel is unique or the defendant-wrongdoer is insolvent*."

*Irwin*, 571 So. 2d at 1061 (emphasis supplied).

Here, plaintiffs note that defendants cannot satisfy the *insolvency* exception to the general requirement of an inadequate remedy at law because "both Micor Industries and Micor Defense are going concerns that can pay any money judgment entered."[45] However, plaintiffs' argument ignores the fact that defendants need not establish that the remedy at law is inadequate where "a *fiduciary* or quasi-fiduciary relation is involved." *Irwin*, 571 So. 2d at 1061 (emphasis supplied). Here, defendants allege that St. George owed fiduciary duties to Jones and C2JS because of

---

[45] Doc. no. 14 (Motion to Dismiss by Micor Industries, Inc. and Micor Defense, Inc.), at 2.

11

his partnership with defendants, and that St. George breached those fiduciary duties through his dealings with the Micor plaintiffs.[46]  Further, defendants can show that the remedy at law is inadequate where "the chattel is unique."  *Id.*  Here, the chattel at issue is an invention whose uniqueness is evident from defendants' applications for patent protection.[47]  In light of *Irwin*, this court will deny the motions to dismiss the unjust enrichment counterclaims.

## B.    Counterclaim for Inducement of Breach of Contract Against the Micor Plaintiffs

The Micor plaintiffs move to dismiss the counterclaim for inducement of breach of contract because that claim is not recognized under the law of this state.[48]  In support, the Micor plaintiffs rely on *Erswell v. Ford*, 208 Ala. 101 (1922), a ninety-year-old case in which the Alabama Supreme Court held that "'[a]n action cannot in general be maintained for inducing a third person to break his contract with the plaintiff; the consequence after all being only a broken contract for which the party to the contract may have his remedy by suing upon it.'"  *Id.* at 103 (quoting *Sleeper v. Baker*, 22 N.D. 386, 394 (1911) (alteration supplied)).

Defendants correctly note that the Micor plaintiffs' "understanding of Alabama

---

[46] Doc. no. 10 (Answer and Counterclaim) ¶¶ 8-10, 27-29, 32-33, 87-93.

[47] *Id.* ¶¶ 10-14; doc. nos. 10-3 (Provisional Application); 10-4 ('539 Application); 10-5 (PCT '446 Application).

[48] Doc. no. 14 (Motion to Dismiss by Micor Industries, Inc. and Micor Defense, Inc.), at 1.

law is more than twenty-six years out of date."[49]  Indeed, in *Gross v. Lowder Realty*

*Better Homes & Gardens*, 494 So. 2d 590 (Ala. 1986), the Alabama Supreme Court

painstakingly summarized the Alabama cases decided since *Erswell*, and concluded

that "we are left with what we perceive to be an outdated and inconsistent body of law

pertaining to intentional interference with business and contractual relationships." *Id.*

at 596.  In a decision that explicitly overruled the *Erswell* holding, the *Gross* court

determined that

> Alabama's limited recognition of the tort of interference with contractual
> relations is clearly a minority position; the vast majority of jurisdictions
> recognize a broad application of the cause of action.  The authority relied
> upon by this Court in earlier years to fashion the Alabama rule
> represented what was then the minority view, a view which has since that
> early time been largely repudiated.
>
> The general rule firmly meshed into the law of most jurisdictions
> today is that one who, without justification to do so, induces a third
> person not to perform a contract with another, is liable to the other for
> the harm caused thereby.  *See* 45 Am. Jur. 2d *Interference* § 39 (1969);
> Annot., 26 A.L.R. 4th 9 (1981).  This rule has been brought about by the
> recognition that rights of a party to a contract or business relation are of
> paramount importance in the business community and should be
> protected from unjustified interference by third persons.
>
> Furthermore, many jurisdictions have established a cause of action
> broad enough to include not only interference with contractual relations,
> but also interference with business relations not necessarily involving a
> contract.  *See* 45 Am. Jur. 2d *Interference* §§ 49-50 (1969); Annot., 5
> A.L.R. 4th 9 (1981).  Adoption of this broad scope of the cause of action
> has been recognized as the better approach in those jurisdictions, such as

---

[49] Doc. no. 23 (Response to Motion to Dismiss by Micor Industries, Inc. and Micor Defense, Inc.), at 2.

ours, in which an action for interference with business relations is allowed. We see no reason to continue the distinction between the two causes of action and are of the opinion that a single set of elements, broadly defined, so as to include both causes of action, would simplify and clarify the law in this area.

> *Therefore, we announce a new rule in this state broad enough to encompass both interference with business relations and interference with contractual relations, and which also expands the cause of action for interference with contractual relations so as to incorporate the majority rule.* We hold that this tort of intentional interference with business or contractual relations, to be actionable, requires:

> (1) The existence of a contract or business relation;

> (2) Defendant's knowledge of the contract or business relation;

> (3) Intentional interference by the defendant with the contract or business relation;

> (4) Absence of justification for the defendant's interference; and

> (5) Damage to the plaintiff as a result of defendant's interference.

*Gross*, 494 So. at 596-97 (footnotes omitted, emphasis supplied). Other recent cases have reaffirmed the existence of a claim for intentional interference with business or contractual relations under Alabama law, while continuing to refine the elements of such a claim. *See, e.g.*, *White Sands Group, L.L.C. v. PRS II, LLC*, 32 So. 3d 5, 11-14 (Ala. 2009); *Booth v. Newport TV, LLC*, Case No. 2100413, 2011 Ala. Civ. App. LEXIS 358, 22-23 (Dec. 16, 2011). Accordingly, this court will deny the motion to dismiss the counterclaim for inducement of breach of contract against the Micor

plaintiffs.[50]

## C.     Counterclaims for Fraud, Fraudulent Misrepresentation, and Fraud in the Inducement Against St. George

St. George moves to dismiss the counterclaims for fraud, fraudulent misrepresentation, and fraud in the inducement because those claims are not pled with sufficient specificity to satisfy the heightened standard of Federal Rules of Civil Procedure 9(b) and (f).[51]   Rule 9(b) provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."   Fed. R. Civ. P. 9(b) (alteration supplied).   Under Rule 9(f), "[a]n allegation of time or place is material when testing the sufficiency of a pleading." Fed. R. Civ. P. 9(f) (alteration supplied).

St. George first argues that defendants insufficiently allege the existence of a partnership between Jones and St. George.[52]   The existence of a partnership can, however, be inferred from the allegations, *e.g.*, that Jones and St. George agreed to develop a .50-caliber bull pup sniper rifle,[53] that Jones purchased the parts and paid

---

[50] The motion to dismiss the counterclaim for inducement of breach of contract only discusses the grounds for dismissal under *Alabama* law.  Accordingly, this court need not address defendants' argument that the claim is also sufficiently pled under *Tennessee* law.  *See* doc. no. 23 (Response to Motion to Dismiss by Micor Industries, Inc. and Micor Defense, Inc.), at 4-5.

[51] Doc. no. 17 (Motion to Dismiss by Charles St. George), at 2-4.

[52] Doc. no. 18 (Brief in Support of Motion to Dismiss by Charles St. George), at 11.

[53] Doc. no. 10 (Answer and Counterclaim) ¶ 10.

St. George several hundred thousand dollars to refine the design,[54] that Jones and St. George created and organized C2JS to license and market the weapon,[55] that Jones and St. George engaged in various marketing activities,[56] and that Jones paid counsel to patent and trademark the weapon.[57]  Indeed, St. George admitted that he and Jones had a "business relationship."[58]

St. George further argues that defendants do not state which of St. George's acts defrauded defendants, or specify the dates those acts took place.[59]  By way of example, however, defendants clearly allege that St. George sent Jones an e-mail dated October 21, 2009, in which St. George requested that Jones "move ASAP" with the filing of provisional patent applications for the new sniper rifle.[60]  At St. George's urging, and with St. George's approval, Jones engaged counsel to patent and trademark the weapon, and paid both firms' legal fees.[61]  St. George then secretly licensed the sniper rifle to the Micor plaintiffs in January of 2012,[62] and filed a letter expressly abandoning the pending patent applications for the rifle in April of 2012.[63]

---

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] *Id.* ¶ 12; doc. no. 10-1 (Engagement Letter with Harrington & Smith).

[58] Doc. no. 19 (Answer to Counterclaim) ¶¶ 8, 15, 35, 45, 55, 66, and 76.

[59] Doc. no. 18 (Brief in Support of Motion to Dismiss by Charles St. George), at 12-13.

[60] Doc. nos. 10 (Answer and Counterclaim) ¶ 11; 10-2 (E-Mail Dated October 21, 2009).

[61] Doc. no. 10 (Answer and Counterclaim) ¶ 12.

[62] *Id.* ¶¶ 27-28.

[63] *Id.* ¶ 32.

If those allegations are true, then St. George first induced Jones to finance efforts to patent the sniper rifle, and later undertook acts depriving Jones of the fruits of his investment.  Accordingly, this court will deny the motion to dismiss the counterclaims for fraud, fraudulent misrepresentation, and fraud in the inducement against St. George.

## IV. CONCLUSION AND ORDER

For the reasons explained above, the motions to dismiss are DENIED.

DONE and ORDERED this 26th day of November, 2012.

_____

United States District Judge

17